**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

BRANDON BLIT, an infant by his Parent and Natural
Guardian, ERICA BLIT, on behalf of himself, and all
others similarly situated,

        Plaintiff,

        v.

WHITE PLAINS PERFORMING ARTS CENTER,
INC. d/b/a White Plains Performing Arts Center,

        Defendant.
_____

**CASE NO.:** 7:22-cv- 8964

**JURY TRIAL DEMANDED**

## <u>COMPLAINT FOR INJUNCTIVE RELIEF</u>

Plaintiff, Brandon Blit, an infant by his Parent ("Brandon") and Natural Guardian, Erica

Blit ("Mother") (collectively, the "Plaintiff"), by and through undersigned counsel, and pursuant

to the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations and

governing legal authorities, hereby files this Complaint and sues the White Plains Performing

Arts Center, Inc., a New York not-for-profit corporation, d/b/a White Plains Performing Arts

Center, (hereinafter the "Defendant") for injunctive relief, attorneys' fees and costs, including

but not limited to disbursements, court expenses and fees, pursuant to 42 U.S.C. § 12181 *et seq*.

(hereinafter "Americans With Disabilities Act" or "ADA") and the ADA Accessibility

Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG"), and for injunctive relief and damages,

pursuant to the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York

State Executive Law ("Executive Law"), New York State Civil Rights Law ("Civil Rights

Law"), § 40, and alleges as follows:

## NATURE OF CLAIMS

1. This lawsuit is in response to the inexcusable discriminatory misconduct by the Defendant when it segregated, a young boy named Brandon, who was born with a genetic disorder and as a consequence lives with developmental disabilities to the back of its theatre because it did not appreciate the happy cheering sounds that he was making, while watching the matinee musical comedy show "The Prom" with his family and friends.  Rather than have a policy and procedure in place to accommodate Brandon, and his disability, the Defendant made a financial decision to ignore the legal requirements for ensuring that their place of public accommodation was accessible to all individuals with disabilities, including Brandon. Instead, Defendant made an informed decision that Brandon should either leave the theatre or move to the back of it so that would not have to return monies to other patrons who they asserted, may not have been satisfied with the manner in which Plaintiff was cheering and enjoying the show.  The public accommodation provides to the public a wide array of events, goods, services and other programs, but it imposes access barriers that make it difficult, if not impossible, for patrons who are developmentally disabled to use and enjoy the public accommodations at the theatre.  Specifically, Defendant has a no tolerance for reactions that it deems inappropriate and therefore has created an access barrier that prevents developmentally disabled patrons from being able to enjoy their events, goods, services and programs in the same manner as individuals without developmental disabilities. Accordingly, this lawsuit intends to remediate Defendant's place of public accommodation so that it becomes fully accessible to the Plaintiff, and public at large, in the same manner in which non-disabled customers are able to use the theatre, and so that it implements employee

training, policies and procedures that are not discriminatory or designed to harass and humiliate Brandon and his family.

## JURISDICTION & VENUE

2. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims that arise out of the same nucleus of facts and circumstances as the subject federal claims.

3. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 (B) in that the transaction or occurrence giving rise to this lawsuit occurred in the State of New York.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 et seq.), and Civil Rights Law 40-b. The remedies provided by NYSHRL against discrimination are not exclusive and state administrative remedies.   Such remedies do not need to be exhausted in connection with a lawsuit commenced pursuant to the Federal Civil Rights Act.

## THE PARTIES

5. At all times material hereto, Plaintiff, Brandon, was and is a resident of Westchester County, which is located within the Southern District of New York. He is fifteen years old and participates in this lawsuit by and through his parent and lawful guardian Erica Blit.

6. Brandon has at all material times suffered from a "qualified disability" under Title III of the ADA; Plaintiff was born with a genetic disorder called MED13L syndrome and as a result suffers from a developmental disability which substantially limits his major life activities.

Specifically, Brandon is non-verbal, unable to comprehend or see things outside of his immediate vicinity, has limited mobility and unable to perform his daily lifestyle activities without the assistance of his parents or a guardian. He presents most similarly to autism. Brandon Plaintiff has a physical disability within the meaning of the laws of the NYSHRL. It is particularly important to Brandon that due to his inability to visualize things outside of his immediate vicinity that while attending an event or show at a theatre that he sits in the center of the auditorium within close range to the action. Otherwise, Brandon is unable to visualize the art, entertainment and performance, which occurred when he was forced to the back of the Theatre, as alleged herein.

7.  The Defendant, White Plains Performing Arts Center, Inc., a New York not-for-profit corporation, d/b/a White Plains Performing Arts Center, is authorized to conduct, and is conducting business within the State of New York.

8.  Upon information and belief, Defendant is the lessee and/or operator of the real property, and the owner of the improvements where a performing arts theatre is located, which is the subject of this lawsuit, the facility commonly referred to as White Plains Performing Arts Center, which is located at 11 City Place, White Plains New York 10601 (hereinafter the "Subject Facility" and/or "Theatre").

9.  The Theatre is a place of "public accommodation" as that term is defined under the ADA; specifically, the Theatre is operated as a multi-purpose performing arts center that hosts events open to the public by Defendant, including shows, concerts, dance, and other benefits related to these events.

10. Prior to the commencement of this action, on October 9, 2022, Brandon together with his Mother, 10-year-old sister and her similarly aged friend purchased orchestra seating in the

Theatre to view the matinee performance of the "The Prom[1]."  Plaintiff purchased tickets to "The Prom" because it was an upbeat lively performance that was age appropriate for children, like Brandon. Due to Brandon's disability, Plaintiff purchases seating that is close and center to the performance and action so that Brandon is able to observe and enjoy the show.  During the performance of the show, Brandon was happy and making sounds to show his appreciation for the performance that may have been different than how other patrons in the Theatre may have responded.

11. Despite this, during the intermission of the show, a general manager approached Plaintiff, in public viewing, and informed the Mother that other patrons "were complaining" about Brandon and they would need to either (a) leave their paid orchestra seating and move to the back of the auditorium or (b) leave the Theatre and a refund would be issued, despite not being required (the "Ultimatum").

12. The Ultimatum was made during the matinee performance of the show "The Prom" which is ironically about inclusion and love.

13. The Ultimatum caused Brandon to be distressed because he did not understand why he was being asked to leave his seats with family and friends.

14. The Ultimatum caused Brandon's 10-year-old sister to immediately cry and feel humiliated for her big brother.

15. As a result of hoping to avoid further humiliation and embarrassment, Brandon's Mother made a parental decision to stay in the Theatre (not leave like Defendant hoped) and begrudgingly move Brandon, her daughter and friend to the back of the Theatre, where they were segregated for the second half of the performance.

---

[1] Defendant ironically advertises "The Prom" on its website by stating "[e]veryone's invited to….[a] musical comedy about big Broadway stars on a mission to change the world and the love they discovery that unites them all" *(emphasis added)*. https://wppac.com/shows/the-prom/

16. Here, Plaintiff was forced to watch the show from the last row, away from their paid orchestra seating, and from the music and choreography that Brandon loved and enjoyed.

17. In addition, Defendant reversed the initial refund (that it issued upon hope that Brandon left the Theatre rather than watch from the back of it) to Plaintiff's form of payment, but when it realized that Plaintiff did not leave the Theatre, it still charged Plaintiff for the full price of the orchestra seats despite being forced to view the show from the Theatre's last row.

18. In response to Plaintiff's displeasure of the discriminatory conduct allowed by Defendant, its employees and lack of policies and procedures exemplified by its issuance of the Ultimatum, Defendant informed Plaintiff, in writing, that "[w]hen a special needs person or child acts out, the courteous thing to do is [for Plaintiff] to remove the person from the theatre…"

19. Defendant also defended its staff's actions by proudly proclaiming that they "acted in a thoughtful and considerate manner to minimize the embarrassment..." [to Plaintiff] by issuing the Ultimatum.

20. That, Defendant justified its right to discriminate against Plaintiff, and overlooked its lack of employee training, policies and procedures for developmentally disabled patrons, by relying upon their unlawful "Terms & Conditions" memorialized on the back of its ticket, which states, in relevant part,

> "MANAGEMENT RESERVES THE RIGHT TO
> REFUSE ADMISSION OR EJECT ANY PERSON
> WHOSE CONDUCT IS DEEMED BY
>  MANAGEMENT TO BE DISORDERLY…"

21. Defendant's "Terms & Conditions" make no consideration for individuals with disabilities.

22. Plaintiff was not acting in a disorderly fashion, but rather happy and cheering on the show in line with his developmental disability.

23. That, Defendant deemed Brandon's conduct to be "disorderly" and warranting an exit of the Theatre or to the back of it because it did not agree with the manner in which he happily cheered on the performance is discrimination and desegregation of the disabled from the public at large.

24. As a result, Plaintiff was denied full access to, and full enjoyment of the facilities at the Theatre, and/or the accommodations offered to the public therein in that Plaintiff was restricted and limited by his disabilities due to the Theatre's refusal to accommodate his disabilities and the discrimination that ensued as a result therein.

25. As a result, Plaintiff suffered an injury in fact.

26. That, Plaintiff desires to revisit the Theatre in the future to view theatrical plays, shows and other performances, when and if it implements policies and procedures to accommodate individuals with disabilities, as well as, employee training to accommodate guests with disabilities.

27. That, Plaintiff continues to be injured in that he is unable to and continues to be discriminated against due to the discriminatory policies and procedures and lack of employee training that remain in place at the  Theatre, which are in violation of the ADA and New York State anti-discrimination laws.

28. Venue is proper in the Southern District of New York because the Defendant's acts of discrimination occurred in the Theatre, which is located in this District.

## **CLASS ALLEGATIONS**

29. Plaintiff brings this class action on his own behalf, and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of a class of people defined as follows:

30. All disabled individuals with developmental disabilities or other cognitive disabilities who have been unable to attend a show at Defendant's Theatre.

31. Excluded from the Class is any person who is an executive, officer, employee, and/or director of the Defendant.

32. The members of the Class are so numerous that joinder of all Class members is not practical.  The precise size of the Class will be determined through discovery.

33. Plaintiff's claims are typical of those of the entire Class.  Plaintiff, along with every member of the Class, has suffered civil right violations because of Defendant's continuing failure to comply with the ADA and ADAAG, and New York State laws.

34.  Plaintiff can and will adequately protect the interests of all members of the Class and has retained competent counsel experienced in both ADA and class action litigation.  Plaintiff has no interest that is contrary to the interest of the Class members in this case.

35. A class action is far superior to any other possible method for adjudicating this controversy.  Each member of the Class is entitled to injunctive relief, as well as possible statutory damages under New York law.  The expense and burden associated with individual litigation of each claim held by each member of the Class would be extraordinarily inefficient for Defendant, members of the Class, and the courts.

36. Common questions of law and fact prevail with respect to all members of the Class and predominate over questions applicable solely to individual Class members.  Among such common questions of law and fact is whether Defendant has violated Federal and New York State statutory obligations by failing to comply with the ADA, ADAAG, and NYSHRL such that all physically disabled persons are afforded fair and equal access to any theatre or place of public accommodation owned by Defendant.

37.  Plaintiff knows of no special or unique difficulties that would be encountered in the management of this litigation that might preclude its maintenance as a class action.

38.  The names and addresses of disabled individuals who have encountered non-compliance as set forth herein, and who have been excluded from full and equal access to required accessibility information regarding the Theatre is obtainable through traditional channels used to identify members of any class; notice of this case, informing members of the Class that this case exists and that he/she may be a member of the Class, can be delivered by U.S. or electronic mail, using techniques and in a form of notice similar to those customarily used in class action litigation, and can additionally be advertised by television, internet, radio, and other means of transmission that are likely to reach members of the Class.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

39. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

40. On or about July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

41. Congress specifically found, *inter alia*, that:[2]

    i.    Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    ii.    Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

---

[2] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

    iii.    Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities;

    iv.    Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; and,

    v.    The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42. Congress explicitly set forth the purpose of the ADA; to wit:[3]

    i.    Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    ii.    Provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

    iii.    Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

---

[3] 42 U.S.C. § 12101(b) (1)(2) and (4).

43. The congressional legislation provided commercial enterprises with a period of one and a half years from the enactment of the statute to implement the requirements imposed under the ADA.

44. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[4]

45. Pursuant to 42 U.S.C. §1281(7) and 28 C.F.R. §36.104, the Theatre, which is subject to this action is a public accommodation because it provides good and services to the public.

46. Upon information and belief, the Defendant has sufficient income to make readily achievable accessibility modifications to its policies and procedures at Theatre.

47. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").[5]

48. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[6]

49. Plaintiff intends to return to the Subject Facility due to the Theatre's proximity to their home and enjoyment that Brandon has when attending a musical show.

50. Plaintiff suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, as a result of this incident.

51. The Subject Facility is legally required to be, ***but is not***, in compliance with the ADA and/or ADAAG.

---

[4] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).
[5] 28 C.F.R. Part 36.
[6] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

52. That, Defendant has failed to comply with Title III of the ADA, 42 U.S.C. § 12182 (b)(2)(A)(II), wherein it refused and failed "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53. That, Defendant unlawfully discriminated against Plaintiff by denying Brandon the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the Theatre[7].

54. Plaintiff has attempted to use and enjoy the Subject Facility, but has been precluded from doing so, because of his disabilities; specifically, Plaintiff was asked to leave the Theatre or move to the back of it because Defendant didn't agree with the way Brandon laughs and cheers at musical shows. These violations, which include but are not limited to those enumerated herein, prohibit Plaintiff from using and enjoying the goods and services provided for at the Subject Facility, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

55. Defendant utilizes standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

56. Remediating the ADA and/or ADAAG violations by implementing policies and procedures and employee staff training for developmentally disabled patrons, as set forth herein is both technically feasible and readily achievable.

---

[7] 42 U.S.C. 12182(b)(1)(A)(I)

57. Plaintiff intends to visit the Subject Facility, again in the future (immediately upon Subject compliance with an Order of this Court requiring that Defendant remedy the subject ADA violations) in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations offered at the Subject Facility; however, in light of Brandon's disability, unless and until the Subject Facility, is brought into compliance with the ADA, Plaintiff will remain unable to fully, properly, and safely use and enjoy the Subject Facility, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

58. As a result of the foregoing, Defendant have discriminated against, and continue to discriminate against the Plaintiff, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the /or Subject Facility. Defendant' discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq*.

59. Moreover, Defendant will continue to discriminate against Plaintiff, and others similarly situated, until it is compelled by this Court to remove all physical barriers upon the Subject Facility, which violate the ADA and/or ADAAG, including but not limited to those specifically set forth herein, and to make the Subject Facility, accessible to and usable by persons with disabilities, including Plaintiff.

60. Plaintiff is without adequate remedy at law, and is suffering irreparable harm, and reasonably anticipates that Brandon will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA and/or ADAAG violations that exist upon the Subject Facility, including but not limited to those set forth herein.

61. This Court is vested with authority to grant injunctive relief sought by Plaintiff herein, including entry of an order requiring alteration and modification of the Defendant's employee training, policies and procedures for operating the Theatre, so as to make them readily accessible to and useable by individuals with disabilities, including but not limited to Plaintiff to the extent required by ADA and/or ADAAG.

62. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorneys' fees, costs, and litigation expenses, all of which are recoverable against the Defendant.[8]

63. Pursuant to the ADA, Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendant.

64. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL, N.Y. EXEC. LAW ART. 15**

65. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

66. Brandon suffers from a rare genetic disorder called Med13L that has resulted in significant developmental disabilities that impedes his ability to speak, eat, and/or comprehend and see things outside of his immediate vicinity. He presents most similarly to autism.

67. Therefore, Plaintiff suffers from a disability within the meaning of N.Y. Exec. Law § 296(21).

68. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee

---

[8] 42 U.S.C. §§ 12205, 12117

of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

69. The New York State Human Rights Law provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation...because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … [9]

70. In 2019, the New York legislature enacted legislation that provides the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

71. The amendment of Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

72. The  Subject Facility is a place of public accommodation as defined by the NYSHRL because it owns and operates a public facility (i.e., the Theatre).

73. Plaintiff visited the  Subject Facility and encountered discriminatory policies and procedures, as well as, employees  that acted as barriers described herein.

---

[9] NYS Exec. Law § 296 (2) (a).

74. By maintaining policies and procedures that discriminate against people with disabilities and Defendant's lack of employee training through the actions described above, Defendant have, directly or indirectly, refused, withheld, and/or denied to Plaintiff, because of his disability, the accommodations, advantages, facilities or privileges thereof provided at the Subject Facility.

75. Defendant discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.

76. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

77. Plaintiff has been damaged and will continue to be damaged by this discrimination in an amount to be determined at trial.

78. Plaintiff is also entitled to reasonable attorneys' fees and costs.

79. Plaintiff respectfully requests a judgment pursuant to N.Y. Exec. Law § 297, including compensatory damages contemplated by § 297(9).

80. Plaintiff seeks a judgment pursuant to N.Y. Exec. Law §297, including damages pursuant to § 297(9) thereof.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF CIVIL RIGHTS LAW ART. 4)**

81. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

82. Plaintiff served notice thereof upon the attorney general as required by Civil Rights Law §41.

83. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and

16

limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

84. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

85. Plaintiff is within the jurisdiction of New York because Plaintiff is a resident of New York State and personally visited the Theatre, a place of public accommodation, in New York State. The Defendant targets New York citizens in New York State and is a sales establishment and public accommodation within the definition of Civil Rights Law § 40-c(2). The Subject Facility provides services, privileges, and/or advantages of Defendant.

86. Defendant is subject to the Civil Rights Law because it owns and operates the Subject Facility. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

87. Defendant is violating Civil Rights Law § 40-c(2) in imposing access barriers to the Subject Facility, causing the Subject Facility and the services integrated with the Subject Facility to be completely inaccessible to the developmentally disabled. This inaccessibility denies developmentally-disabled patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

88. To make the Subject Facility accessible to the developmentally-disabled, Defendant need only cease its existing policy and procedure, which is to remove or put in the back of the

Theatre the developmentally disabled patrons, and to properly train its employees on accommodating the disabled. Making the Subject Facility accessible by implementing such policies and procedures and properly training their employees would not fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

89. 91. In addition, Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby…"

90. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

91. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of his disability, and therefore, are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 et seq. and/or its implementing regulations.

92. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 et seq. for each and every offense.

## **<u>INJUNCTIVE RELIEF</u>**

93. Plaintiff will continue to experience unlawful discrimination because of Defendant' failure to comply with the ADA and the NYSHRL.

94. Pursuant to 42 U.S.C. § 12188, this Honorable Court is vested with the authority to grant injunctive relief in favor of the Plaintiff, including but not limited to the issuance of an Order to (a) alter the Subject Facility so that they are made readily accessible to, and useable by, all

individuals with disabilities, including Plaintiff, as required pursuant to the ADA and NYSHRL, including but not limited to accessible seating; (b) requiring that it implement policies and procedures for the developmentally disabled, (c) implementing training for their employees on accommodating the developmentally disabled, and (d) closing the facilities until the requisite modifications are complete and the Subject Facility is compliant under the ADA and New York State laws.

95. Therefore, injunctive relief is necessary to order Defendant to alter and modify their place of public accommodation, their policies, business practices, operation, policies s and procedures.

96. Injunctive relief is also necessary to make the Subject Facility readily accessible and useable by Plaintiff in accordance with the ADA and NYSHRL.

**WHEREFORE**, Plaintiff hereby demands judgment against the Defendant and requests the following injunctive and declaratory relief:

a) A declaration that the Subject Facility owned, leased, operated, controlled and/or administrative by Defendant is in violation of the ADA and the NYSHRL, Executive Law and Civil Rights Law;

b) An Order requiring Defendant to evaluate and neutralize their policies, practices and procedures towards individuals with disabilities, for such reasonable time to allow the Defendant to undertake and complete corrective procedures to the Subject Facility, including but not limited to accessible seating;

c) An Order requiring Defendant undertake and complete a program of corrective actions as may be necessary, to remediate and eliminate all ADA

and ADAAG violations found at trial to be present upon the Theatre and/or the Subject Facility;

d)  A declaration that Defendant owns, maintains and/or operates its Theatre in a manner which discriminates against developmentally disabled individuals and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* Executive Law § 296, *et seq.,* and the laws of New York;

e)  An Order requiring Defendant to implement employee staff training and policies and procedures to make the Theatre accessible to and useable by individuals with disabilities as required pursuant to Title III of the ADA, the ADAAG, NYSHRL, Executive Law and Civil Rights Law;

f)  Requiring that the Subject Facility be closed to the general public until such time as it complies with all ADA and NYSHRL, requirements, including but not limited to complete remediation of its employee training, policies and procedures at the Subject Facility;

g)  An Order issuing a permanent injunction ordering Defendant to close the Subject Premises and Subject Facility and cease all business until Defendant remove all violations under the ADA and the NYSHRL, including but not limited to the violations set forth herein;

h)  Find that Plaintiff is a prevailing party and award reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of the Plaintiff, and award such pursuant to the ADA and NYSHRL;

i)   An award of monetary damages in favor of Plaintiff to the maximum amount permitted by the NYSHRL, Executive Law and Civil Rights Law, as well as, compensatory and punitive damages;

j)   Granting the Plaintiff and the Class such other and further relief, as the Court deems just under the circumstances; and

k)   Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity

l)   For such other and further relief that this Court deems just, necessary and proper.

Dated:  October 20, 2022                              Respectfully Submitted,

**BASHIAN & PAPANTONIOU P.C.**
*Attorneys for Plaintiff*
500 Old Country Road, Ste. 302
Garden City, NY 11530
Tel:    (516) 279-1554
Fax:    (516) 213-0339
***By:*** */s/ Erik M. Bashian, Esq.*
**ERIK M. BASHIAN, ESQ. (EB7326)**
eb@bashpaplaw.com


**LEVINE & BLIT, PLLC**
*Attorneys for Plaintiff*
Empire State Building
350 5th Ave. 40th Fl.
New York, NY 10118
(212) 967-3000
By: /s/ Matthew Blit, Esq.
**MATTHEW BLIT, ESQ. (MJB4145)**
mblit@levineblit.com

21

## **VERIFICATION**

Erica Blit, as parent and guardian of Brandon Blit, hereby verifies and says that I am the Plaintiff in the above-captioned case. I have reviewed the allegation and they are true and correct to the best of my knowledge, information, and belief.

Dated: October 20, 2022

Erica Blit